UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

GLENN DOUGLAS KELLEY,

      Petitioner,

v.                                              Case No.  3:13cv648/MCR/CJK

JULIE L. JONES,[1]

      Respondent.

_____/

ORDER and
REPORT AND RECOMMENDATION

      Before the court is a petition for writ of habeas corpus filed under 28 U.S.C.

§ 2254.  (Doc. 1).  Respondent filed an answer, submitting relevant portions of the

state court record.  (Doc. 17).  Petitioner declined to reply.  (Doc. 20).  The matter is

referred to the undersigned magistrate judge for report and recommendation pursuant

to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all

issues raised by petitioner, the undersigned concludes that no evidentiary hearing is

required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section

2254 Cases in the United States District Courts.  The undersigned further concludes

_____

[1]Julie  L. Jones succeeded Michael D. Crews as Secretary of the Florida Department of
Corrections, and is automatically substituted as the respondent.  Fed. R. Civ. P. 25(d).

that the pleadings and attachments before the court show that petitioner is not entitled to federal habeas relief, and that the petition should be denied.

BACKGROUND AND PROCEDURAL HISTORY

On December 17, 2008, petitioner was charged in Escambia County Circuit Court Case No. 08-CF-5944, with burglary of an unoccupied dwelling (Count 1), possession of a firearm by a convicted felon (Count 2), grand theft (Count 3) and criminal mischief (Count 4).  (Doc. 17, Ex. A, pp. 1-2).[2]  Count 2 was severed for trial.  (Ex. PD-1, p. 6, lines 114-116).  Petitioner went to trial on Counts 1, 3 and 4 (Ex. B), and the jury found him guilty as charged.  (Ex. A, pp. 23-40, 68-69).  Petitioner then entered a guilty plea to Count 2.  (Ex. C).  By judgment rendered December 2, 2009, petitioner was adjudicated guilty of all counts and sentenced to concurrent terms of 8 years imprisonment on Counts 1 and 2, and concurrent terms of 5 years imprisonment on Counts 3 and 4, concurrent to Count 2.  (Ex. A, pp. 71-79).  The Florida First District Court of Appeal (First DCA) affirmed the judgment on August 11, 2011, per curiam and without a written opinion.  *Kelley v. State*, 67 So. 3d 204 (Fla. 1st DCA 2011) (Table) (copy at Ex. H).

---

[2]All references to exhibits are to those provided at Doc.17, unless otherwise noted.  If a cited page has more than one page number, the court cites to the page number appearing at the bottom center of the page.

On October 21, 2011, petitioner filed a counseled motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, seeking to reduce his sentence due to medical conditions. (Ex. I, pp. 1-4). The state court treated the motion as one for modification of sentence under Florida Rule of Criminal Procedure 3.800(c), and denied relief. (Ex. I, p. 5).

On February 7, 2012, petitioner submitted to prison officials for mailing a motion for appointment of counsel. (Ex. J, pp. 20-22). That motion was filed February 10, 2012, as were petitioner's undated, *pro se* Rule 3.850 motion and supporting memorandum. (Ex. J, pp. 1-11, 12-19).[3] The Rule 3.850 motion was stricken as facially insufficient with leave to amend within thirty days. (Ex. J, pp. 23-26). After receiving a 6-month extension of time to amend (Ex. J, pp. 28-29), petitioner filed a motion to withdraw his Rule 3.850 motion, citing his desire to file a federal habeas petition. (Ex. J, p. 30). The state court granted the motion on May 25, 2012, reminding petitioner of Rule 3.850's time constraints. (Ex. J, pp. 31-32).

On November 29, 2012, petitioner submitted a new, *pro se* Rule 3.850 motion and memorandum. (Ex. J, pp. 34-60). The state circuit court summarily denied relief

---

[3]The court assumes petitioner's Rule 3.850 motion and memorandum were submitted to prison officials for mailing on February 7, 2012, the same date petitioner submitted his motion for appointment of counsel.

without an evidentiary hearing. (Ex. J, pp. 61-172). Petitioner appealed, and filed an initial brief. (Ex. K). The First DCA affirmed, per curiam and without a written opinion. *Kelley v. State*, 126 So. 3d 1060 (Fla. 1st DCA 2013) (Table) (copy at Ex. M). The mandate issued December 19, 2013. (Ex. O).

Petitioner filed this federal habeas petition on January 14, 2014. (Doc. 1). The petition raises two claims of trial court error and seven claims of ineffective assistance of trial counsel. Respondent asserts that habeas relief should be denied, because review of petitioner's first claim is barred by the *Stone v. Powell* doctrine, and petitioner's remaining claims fail to satisfy the § 2254(d) standard. (Doc. 17; *see Stone v. Powell*, 428 U.S. 465, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976)).

## SECTION 2254 STANDARD OF REVIEW

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[4]  The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court

---

[4]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *Thaler v. Haynes*, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). If the state court decision is contrary to clearly established federal law, the federal habeas court must

independently consider the merits of the petitioner's claim. *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).

The United States Supreme Court emphasized recently:

When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning

their decisions only when there could be no reasonable dispute that they were wrong.  Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  *Harrington*, supra, at 102-103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods v. Donald*, — U.S. —, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  As with the "unreasonable application" clause, the federal court applies an objective test. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").  The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011).

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct.  28 U.S.C. § 2254(e)(1).

The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"). Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(1) interact in the context of fact-based challenges to state court adjudications. *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011). However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. at 954. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the

Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

DISCUSSION

Ground One      "The trial court erred in denying Appellant's motion to dismiss the charges filed against him in this case on Fourth Amendment grounds." (Doc. 1, p. 6).[5]

Petitioner claims his rights under the Fourth Amendment were violated when law enforcement officers entered his home absent his consent, a warrant, probable cause, or exigent circumstances. (Doc. 1, pp. 6-7). Petitioner asserts he exhausted this claim by raising it at trial and on direct appeal. (*Id.*, pp. 7-8). Respondent asserts that federal habeas review of petitioner's Fourth Amendment claim is not available pursuant to the *Stone v. Powell* doctrine. (Doc. 17, pp. 3-5).

The *Stone v. Powell* doctrine provides: "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. at 494 (footnotes omitted). "'For a claim to be fully and fairly considered by the state courts,

---

[5]References to page numbers of the petition are to petitioner's pagination.

where there are facts in dispute, full and fair consideration requires consideration by the fact-finding court, and at least the availability of meaningful appellate review by a higher state court.'" *Mincey v. Head*, 206 F.3d 1106, 1126 (11th Cir. 2000) (*quoting Tukes v. Dugger*, 911 F.2d 508, 513-14 (11th Cir. 1990), *in turn quoting Morgan v. Estelle*, 588 F.2d 934, 941 (5th Cir. 1979)).

Petitioner raised his Fourth Amendment claim in state court by filing a motion to dismiss the charges on the ground that the illegal, warrantless entry into, and search of, his home or vehicle tainted any evidence linking him to a crime. (Ex. A, pp. 47-50; Ex. B, pp. 12-25). A hearing was held where petitioner's evidence (depositions of law enforcement officers and the victim) was considered and arguments heard. (Ex. B, pp. 12-27). The state trial court denied petitioner's motion, making the following explicit findings on matters essential to the Fourth Amendment issue:

> All right. I've had the opportunity to review the depositions of William Hallford, H-A-L-L-F-O-R-D; Brian Munhollon, M-U-N-H-U-L-L-O-N (sic), and Timothy Gibson [the victim].
>
> I understand both your arguments. I could see how you could both make your arguments from the depositions. But after having gone through them, the motions, both of them, are denied [referring to the defense motion to dismiss on grounds of illegal search and seizure, and the defense motion to suppress the victim's identification of petitioner, discussed below in Ground Two].
>
> . . . .

I suppose I ought to put some things on the record as far as the depositions that I just read. First of all, I do think it would be inevitable discovery because I think that Mr. Gibson's [the victim's] testimony, it was that he [petitioner] was the one. He [Gibson] did see the man [petitioner], he did talk to the man, the man did talk back to him. He is the one that remembered that he [petitioner] had been at the neighbor's house. He's the one that sought out that information. The address [of petitioner's home] was given to him [Mr. Gibson]. So I think that it would have been inevitable discovery anyway.

But Mr. Gibson also went further to talk about it wasn't just the back end of the van that he saw with the tag. Clearly he said he was standing right behind the van when the van was leaving. But it wasn't only the van, it wasn't only the sticker – I mean, it wasn't' only the tag, the stickers, the broken window. He talks about the color, the make, the model, the fact that he actually thought it had a flat tire, that it was beat up. Apparently it was a considerably beat-up van, but because – and then it did stall once or twice. So apparently Mr. Gibson got a pretty good look at all of the van during the entire time that this event was going on. And he clearly said in his deposition that even though it was backed into this cubby hole that he recognized the van immediately. He did say it was dark, but he said that he saw the color. He saw – I think he said he thought it was a Chevy or something. But he clearly said I recognized the van when I saw it.

As far as the officer and the house, yes. Officer Hallford does say alone at one point in time, but he also goes back and says no, I do know that there were other officers around, but it wasn't their primary job to be doing anything. They were there just as back-ups. So I really don't know who was there and who wasn't at a specific time. But based upon Deputy Hallford's testimony, the way he said it happened. That the door opened, you know, that he asked if it was the van. He then said he immediately – Mr. Kelley immediately went back and sat on the couch some six feet from the door. He [Hallford] was fearful at that time because of any sort of potential guns. And then when Mr. Kelley then reached for and indeed had a gun and pulled out a gun. That's when he

jumped in and arrested him.  Even though the other officers were there, unfortunately, with the sad events that just happened in the past couple of days with the four police officers getting shot and killed, and I presume they all had guns on their persons since they were all in uniform.  Someone that has a gun available can be a threat to one, two, three or four officers before they can appropriately react.

So based upon the information that was given in the deposition by Deputy Hallford, even when taken in light of that given with Deputy Munhollon, I do believe that they had appropriate reason to go into the house.

(Ex. B, pp. 34-37).  Petitioner obtained review of the issue on direct appeal, arguing that dismissal of the charges was required "since the entry into appellant's home was illegal, and any evidence obtained pursuant to the illegal entry that linked appellant to a crime . . . was tainted by the prior official illegal action.  As such, the state's evidence was 'fruit of the poisonous tree,' and would have been inadmissible against appellant both at trial and as a factual basis for his plea."  (Ex. F, p. 18).  The state appellate court affirmed.  (Ex. H).

 Petitioner does not assert that he was not given a full and fair hearing on the merits of his Fourth Amendment claim, nor can he.  Indeed, in the face of respondent's assertion of the *Stone v. Powell* bar, petitioner affirmatively waived the filing of any reply.  (Doc. 22).  The record establishes his claim was fully and fairly considered by the state courts; accordingly, it provides no basis for federal habeas

relief.  *See, e.g., Devier v. Zant*, 3 F.3d 1445, 1455 (11th Cir. 1993) (holding that where Fourth Amendment claims were raised by motion to suppress and on appeal they were given a full and fair hearing and therefore barred under *Stone*).

Ground Two    "The trial court erred in denying Appellant's motion to suppress the unduly prejudicial identification procedure employed by law enforcement, thereby denying him a fair trial." (Doc. 1, p. 8).

The victim Timothy Gibson identified petitioner and his van.  (Ex. B, pp. 82-85).  Petitioner claims Gibson's identification should have been suppressed because it derived from a suggestive showup.  (Doc. 1, pp. 8-10).  Petitioner asserts he exhausted this claim by raising it at trial and on direct appeal.  (*Id*., p. 10). Respondent argues that petitioner is not entitled to federal habeas relief, because he fails to satisfy the requirements of § 2254(d).  (Doc. 17, pp. 5-7).

A.    Clearly Established Federal Law

In *Neil v. Biggers*, 409 U.S. 188, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972), the Supreme Court reiterated that "the standard for determining whether an in-court identification would be admissible in the wake of a suggestive out-of-court identification" is whether there was "'a very substantial likelihood of irreparable misidentification'".  409 U.S. at 198 (*quoting Simmons v. United States*, 390 U.S. 377, 384 (1968)).  The *Biggers* Court extended the *Simmons* standard to the

admission of out-of-court identifications, explaining that "with the deletion of 'irreparable' it serves equally well as a standard for the admissibility of testimony concerning the out-of-court identification itself." 409 U.S. at 198. The Court went on to address the specific question of "whether . . . unnecessary suggestiveness alone requires the exclusion of evidence." *Id*. at 198. The Court explained that its prior cases had not clearly resolved that issue:

> Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous. But as *Stovall* makes clear, the admission of evidence of a showup without more does not violate due process.
>
> What is less clear from our cases is whether . . . unnecessary suggestiveness alone requires the exclusion of evidence.

*Biggers* at 198-199 (*discussing Stovall v. Denno*, 388 U.S. 293 (1967) (footnote omitted). The Court declined to adopt a strict rule barring evidence of unnecessarily suggestive confrontations, holding instead that "the central question [is] whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Id*. at 199. "[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of

attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Id.* at 199-200.

Five years later, in *Manson v. Brathwaite*, 432 U.S. 98, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977), the Supreme Court held that "[t]he admission of testimony concerning a suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability." *Id.* at 106 (*citing Biggers*).   "[R]eliability is the linchpin in determining the admissibility of identification testimony."   *Manson* at 114; *see also Watkins v. Sowders*, 449 U.S. 341, 347 (1981) (*citing Manso*n for the proposition that "[i]t is the reliability of identification evidence that primarily determines its admissibility."). The *Manson* Court reaffirmed that the relevant factors in determining the admissibility of identification testimony are those set out in *Biggers*. *Manson* at 117.

B.     Section 2254(d) Review of State Courts' Decision

Prior to trial, the defense moved to suppress victim Timothy Gibson's pretrial and in-court identifications of petitioner on the grounds that they were the product of an unnecessarily suggestive procedure.  (Ex. A, pp. 51-52; Ex. B, pp. 26-31).  The defense relied on the deposition testimony of Gibson and of Deputy Hallford.  (*Id.*).

Mr. Gibson testified in deposition that upon returning to his home with his two-year old daughter on Thanksgiving Day (November 27, 2008) around 3:45 p.m., he observed a beat up silver/gray van parked in his driveway near the garage door.  The van had many NASCAR stickers, was missing windows, and  appeared to have a flat tire.  (Ex. E, pp. 203-204).  Gibson tried to call 911, but he could not get reception on his cellular phone.  (*Id.*, p. 204).  Gibson retrieved his daughter from his vehicle and went to several neighbors' homes to see if they knew anything, but no one was home. As Gibson was putting his daughter back in his vehicle, he noticed petitioner walking out from the privacy fence near his (Gibson's) home.  (*Id.*, p. 205).  Petitioner was approximately four to five feet from Mr. Gibson's house, carrying a white laundry basket.  Mr. Gibson told petitioner to stop, and asked him what he was doing. Petitioner stated he was looking for a friend.  Gibson and petitioner exchanged words. Petitioner got in his van and began driving away as Mr. Gibson was connecting with 911.  Gibson gave the 911 operator a description of the van, reading off the license plate number as it drove away.   As petitioner departed, he waved at Gibson's neighbor's house.  (*Id.*, pp. 206-208, 211).  Gibson recognized petitioner because Gibson saw him previously at a neighbor's house.  Gibson also recognized the van. Gibson talked to his neighbor about who it was.   The neighbor gave Gibson

petitioner's name and phone number. (*Id.*, pp. 209-211). Around seven o'clock that evening, the police took Gibson to a home for a possible identification. Gibson sat in the squad car. Petitioner came to the front door of the home, where a light was overhead. The police asked Gibson if that was the person he saw earlier on his property. Mr. Gibson replied "yeah, that's definitely him." (*Id.*, pp. 218, 222). Gibson also identified the van at petitioner's home as the van he saw parked in his driveway earlier. (*Id.*, p. 224).

Deputy Hallford testified in deposition that he made contact with Timothy Gibson on the day of the burglary. Mr. Gibson gave Hallford a detailed description of the perpetrator and the perpetrator's van. (Ex. E, pp. 145-147). Deputy Hallford also spoke with Mr. Gibson's neighbor who informed him that it could have been her husband's friend, petitioner. This neighbor provided petitioner's address. (*Id.*, p. 145). When Hallford drove by petitioner's house, the van matching the victim's description was parked by the door. (*Id.*, p. 145). Hallford knocked on petitioner's door twice. Petitioner answered the door. Deputy Hallford asked petitioner if that was his van in the driveway. Petitioner turned, went to his couch and sat down, approximately six feet from the door. Deputy Hallford first testified that petitioner invited him inside. Hallford later stated that he did not remember if petitioner said

"come on in" or not.  Deputy Hallford testified that he walked inside for his own

safety.  Hallford asked petitioner if he had any weapons.  Petitioner replied that he did

and reached for a gun in between the couch cushions.  (*Id*., pp. 153-156).  The gun

was loaded.  (*Id*., pp. 157, 165).  Deputy Hallford detained petitioner and retrieved

the firearm.  (*Id*., p. 157).  Deputy Hallford left petitioner in another officer's custody

while he retrieved Timothy Gibson for a possible identification.  (*Id*., p. 159).

Hallford brought Gibson to petitioner's home around five o'clock.  Petitioner stood

at the front door and Mr. Gibson was positioned 20-30 feet away.  (*Id*., pp. 159-160).

After reviewing these depositions, the trial court denied the motion to dismiss.

In addition to the findings set forth above, *see* block quotation, *supra,* Ground One,

the court also found the following:

> And I also then get to the pretrial ID.  Mr. Gibson said I saw him
> previously at the friend's house on not one time but several occasions.
> I saw him when he was in my driveway.  I talked to him when he was in
> my driveway.  He said yes, they went over to the particular house and
> Mr. Kelley was brought out to the front porch under the light, but Mr.
> Gibson clearly said I recognized him as the man that had been at my
> neighbor's before.  So that's my ruling.  Okay.
>
> . . . .
>
> Oh, I forgot.  There was even that part about him waving at the
> neighbor's house, which is part of the reason why he thought about the
> neighbor.

> I guess, for the record, I just used a bunch of 'he's.'  That would
> be the defendant waving at the neighbor's house.

(Ex. B, pp. 37-38).

At trial, Mr. Gibson testified consistent with his deposition testimony.  In addition, Gibson identified petitioner in court as the man he saw at his (Gibson's) house Thanksgiving day, and as the man he later identified with the officers prior to trial.  Gibson testified that when he identified petitioner prior to trial, he was one hundred percent certain petitioner was the man he saw at his house earlier.  (Ex. B, pp. 66-111).

On appeal, petitioner sought review of the trial court's denial of his motion to suppress.  The First DCA summarily affirmed.  (Ex. H).

Petitioner argues that the showup procedure employed by law enforcement was unnecessarily suggestive and that Gibson's out-of-court identification was unreliable.  The state court's factual findings are reasonably supported by the record, and are presumed correct.  The state court reasonably applied the *Biggers* factors to conclude that Gibson's identification of petitioner was reliable.  The court considered Mr. Gibson's opportunity to view petitioner at the time of the crime, Gibson's degree of attention, Gibson's having seen petitioner at a neighbor's house on a prior occasion and recalling petitioner waving at the neighbor's house when he drove off, the

accuracy of Gibson's description of petitioner's van, the level of certainty Gibson

demonstrated at the confrontation, and the short length of time between the crime and

the confrontation.  The state court's rejection of petitioner's claim was consistent with

clearly established federal law, and was based on a reasonable determination of the

facts.  Petitioner is not entitled to federal habeas relief on Ground Two.

Ground Three        "Trial counsel was ineffective for failing to investigate the facts
                    of the Defendant's case, and to present a witness for the defense."
                    (Doc. 1, p. 11).

Petitioner alleges that prior to trial he gave counsel the first name of a man,

Vince, who could testify that petitioner was with him earlier in the day on November

27, 2008, and that he (Vince) asked petitioner to give another man, Rich, a ride to

Rich's house to get food.  (Doc. 1, p. 11).  Petitioner claims that "had trial counsel

gone to the residence of Vince, it is reasonable to believe that counsel would have

been able to find Rich and question him about the alleged crime." (*Id*.).  Petitioner

notes that he (petitioner) "gave Rich a ride to a house that [petitioner] believed to be

where Rich lived." (*Id*.).  Petitioner provides no other sworn or verified facts to

support this claim.[6]  Petitioner concludes that "[t]he resulting prejudice was that

---

        [6]Petitioner attached an "Appendix" to his petition, which contains an unsworn, unverified
narrative titled "Here's my story of the crimes I've been arrested for and falsely accused of." (Doc.
1, App.).  The court will not consider this narrative, as it was not before the state postconviction
court. *Cullen v. Pinholster*, 563 U.S. 170, 181-182, 131 S. Ct. 1388, 179 L. Ed. 2d 557 (2011) ("We
now hold that review under § 2254(d)(1) is limited to the record that was before the state court that

Defendant was not able to produce testimony to show his noninvolvement." (*Id*.).[7]

The parties agree that petitioner presented this claim to the state courts in his Rule

3.850 proceeding. (Doc. 1, p. 12; Doc. 17, p. 9).

    A.    Clearly Established Federal Law

    In *Strickland v. Washington*, 466 U.S. 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674

(1984), the Supreme Court set out a two-part inquiry for ineffective assistance of

counsel claims. The petitioner must show that (1) his counsel's performance was

constitutionally deficient, and (2) the deficient performance prejudiced him. *Id.*, 466

U.S. at 687. "First, petitioner must show that 'counsel's representation fell below an

objective standard of reasonableness. Second, petitioner must show that 'there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184,

106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (*quoting Strickland*, 466 U.S. at 668, 694).

---

adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court
adjudication that 'resulted in' a decision that was contrary to, or 'involved' an unreasonable
application of, established law. This backward-looking language requires an examination of the
state-court decision at the time it was made. It follows that the record under review is limited to the
record in existence at that same time *i.e.*, the record before the state court.").

    [7]Petitioner alleges that although he did not know Vince's last name, counsel could have
located him because petitioner told counsel Vince was on probation.

Trial "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." *Cullen v. Pinholster*, 563 U.S. 170, 131 S. Ct. 1388, 1403, 179 L. Ed. 2d 557 (2011) (quotation marks and alterations omitted). "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. "[T]he absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Burt v. Titlow*, — U.S. —, 134 S. Ct. 10, 17, 187 L. Ed. 2d 348 (2013) (quotation marks and alterations omitted).

With regard to prejudice, the *Strickland* court emphasized that a defendant must show a "reasonable probability" of a different result. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

B.      Section 2254(d) Review of State Courts' Decision

The state courts denied petitioner's claim on the merits.  (Ex. J).  The state

circuit court's written order, which is the last reasoned decision rejecting petitioner's

claim, began by correctly identifying and explaining the *Strickland* standard as the

governing law.  (Ex. J, pp. 61-62).  The court denied relief on this claim, explaining:

> Defendant claims that counsel was deficient for failing to try to
> locate an individual named "Vince" in order to "question him about the
> alleged crime."    "[T]he failure to call witnesses can constitute
> ineffective assistance of counsel if the witnesses may have been able to
> cast doubt on the defendant's guilt, and the defendant states in his
> motion the witnesses' names and the substance of their testimony, and
> explains how the omission prejudiced the outcome of the trial."  Ford v.
> State, 825 So. 2d 358, 360-61 (Fla. 2002).
>
> In his motion, Defendant states that "Vince would have testified
> that he was with him earlier in the day on the date of the alleged crime.
> And that Vince had asked the defendant to give Rich a ride to his house
> to get some food."  However, Defendant does not explain how this
> testimony would have changed the outcome of the trial.  Moreover, after
> reviewing the court record, including the transcripts of the trial, it is not
> apparent how this testimony would have been relevant in any way.
>
> Defendant's claim is facially insufficient because he has failed to
> provide the necessary factual detail.  He has also failed to allege how he
> was prejudiced by any inaction by counsel.  Defendant was previously
> given leave to file an amended motion pursuant to Spera v. State, 971
> So. 2d 754 (Fla. 2007).  Accordingly, Defendant's claim is denied as
> facially insufficient.

(Ex. J, pp. 62-63) (footnote omitted).  The First DCA summarily affirmed.  (Ex. M).

The "contrary to" prong of the AEDPA standard is not implicated here, because the state court utilized the *Strickland* standard. Section 2254(d)(2) likewise provides no basis for relief, because petitioner has not shown that "no 'fairminded jurist' could agree" with the state court's factual determinations. *Holsey v. Warden, Ga. Diagnostic Prison*, 694 F.3d 1230, 1257 (11th Cir. 2012); *Landers v. Warden, Attorney Gen. of Ala.*, 776 F.3d 1288, 1294 (11th Cir. 2015) (reiterating that standard as the test for evaluating the reasonableness of a state court's decision under § 2254(d)(2)). The remaining question is whether petitioner has satisfied AEDPA's "unreasonable application" standard, 28 U.S.C. § 2254(d)(1), giving deference to the state court's fact findings. 28 U.S.C. § 2254(e).

Petitioner's allegations fall far short of establishing that Vince or Rich had relevant information either credibly showing that petitioner was not the perpetrator, undermining the State's identification evidence, or providing an alibi. Petitioner's facts do not arguably raise an inference that Rich would have talked to defense counsel, that Rich knew anything about the crime, or that any information Rich could have provided was relevant or helpful to the defense. Fairminded jurists can concur in the state court's determination that petitioner failed to establish deficient performance and prejudice under *Strickland*. Petitioner is not entitled to federal habeas relief on Ground Three.

Ground Four        "Trial counsel was ineffective for failing to properly investigate the Defendant's claim that he did not open the door and invite the authorities into his house, and for failing to take depositions from all of the officers who entered the Defendant's house uninvited." (Doc. 1, p. 12).

Petitioner alleges that in addition to deputies Hallford and Munhullon, two other officers entered his home the evening of November 27, 2008, without his consent. The two other officers were identified by Hallford and Munhullon as Deputy Cassidy and Sergeant Nix. (Doc. 1, pp. 12-13; *see also* Doc. 17, Ex. E, Hallford Depo. at 148 and Munhullon Depo. at 195). Petitioner faults trial counsel for failing to depose Cassidy and Nix. (Doc. 1, p. 12). Petitioner also faults trial counsel for failing to request a copy of the "video-in-car dash-cam recording" from the squad cars on the night in question. (*Id.*). Petitioner acknowledges that counsel noticed Cassidy's deposition and, when he failed to appear, filed a Motion For Order To Show Cause. Petitioner nonetheless argues that counsel was deficient for failing to depose Cassidy and Nix. (*Id.*, p. 13). Petitioner argues he was prejudiced "because it is known what Deputy Cassidy, and Sergeant Nix would have testified to", and because "Defendant was precluded from challenging the veracity of Deputy Hallford's testimony." (*Id.*).

Respondent asserts that petitioner's claim corresponds, in large part, to the second ground for relief in petitioner's state postconviction motion; however, unlike

petitioner's assertion here that he was precluded from challenging the veracity of Deputy Hallford's testimony, petitioner made no such specific allegation of prejudice in state court – he merely contended that prejudice arose because it was "not known" how Nix and Cassidy would have testified.  (Doc. 17, p. 11 (quoting Ex. J, p. 38)). Respondent argues that petitioner's assertion that he could not challenge the veracity of Deputy Hallford's testimony "is a new legal theory for relief" that is unexhausted and procedurally defaulted, but that the remainder of petitioner's claim was denied by the state courts on the merits.  (Doc. 17, pp. 11-12).

A.      Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of counsel is the *Strickland* standard outlined above.

B.      Section 2254 Review of State Courts' Decision

The state circuit court's written order, which is the last reasoned decision rejecting petitioner's claim, denied relief as follows:

> Defendant claims that counsel should have deposed all of the deputies who responded to the scene at Defendant's house in order to argue that Defendant did not give consent for them to enter his home. Defendant also claims that counsel should have obtained a recording from an "in-car dash cam" in a police vehicle that was at his house that evening to show that he did not consent to the police entering his home.
>
> Again, Defendant's claim is lacking factual detail and does not clearly state how he was prejudiced by counsel's alleged lack of

investigation. Additionally, although Defendant asserts that counsel should have deposed the other deputies, he also states that trial counsel attempted to depose them, but that they failed to appear for the deposition. Importantly, Defendant states that "it is not known what Deputy Cassidy and Sergeant Nix would have testified to." Without alleging what their testimony would have been and how it would have changed the outcome of the trial, Defendant's claim is speculative and facially insufficient. Similarly, Defendant does not specifically allege how the "in-car dash cam" video evidence would have affected the outcome of the proceedings.

Finally, the record reflects that counsel argued that Defendant did not consent to the police entering his home in a pre-trial motion to dismiss, which was denied. Counsel also called Deputies William Hallford and Brian Munh[u]llon to testify during the defense's case in an effort to reiterate the fact that the police did not find any of the victim's property at Defendant's house. It is apparent that counsel investigated the testimony of the deputies that were involved and attempted to use it to the advantage of the defense. Defendant is not entitled to relief on this claim.

(Ex. J, pp. 63-64) (footnotes omitted). The First DCA summarily affirmed. (Ex. M).

The "contrary to" prong of the AEDPA standard is not implicated here, because the state court utilized the *Strickland* standard. Section 2254(d)(2) likewise provides no basis for relief, because petitioner has not shown that "no 'fairminded jurist' could agree" with the state court's factual determinations. *Holsey*, 694 F.3d at 1257; *Landers.*, 776 F.3d at 1294. The remaining question is whether petitioner has satisfied AEDPA's "unreasonable application" standard, 28 U.S.C. § 2254(d)(1), giving deference to the state court's fact findings. 28 U.S.C. § 2254(e).

As an initial matter, the record establishes that after defense counsel filed the Motion For Order To Show Cause based on Deputy Cassidy's failure to appear for deposition scheduled for November 6, 2009 (Ex. A, p. 15), defense counsel did, in fact, take Deputy Cassidy's deposition on November 18, 2009, and withdrew the Motion For Order To Show Cause (Ex. PD-1, Line 117).  (*See* Ex. E, Munhullon Depo. at 182 (defense counsel's statement:  "I just took the deposition of Deputy Cassidy.  He stated . . .") *see also id.* at 183 (describing Munhullon Depo. Ex. 1 as "an exhibit that was drawn by Deputy Cassidy."); Ex. E, p. 178 (indicating that the exhibit referenced in Munhullon's deposition was previously marked in Deputy Jeremy Cassidy's deposition)).  Thus, to the extent petitioner's claim is based on a failure to depose Deputy Cassidy, his claim is conclusively refuted by the record.

As to Deputy Nix, petitioner does not allege the substance of Nix's proposed deposition testimony, nor does he present facts showing that Nix's testimony would have provided new or different information than Hallford's, Munhullon's, or Cassidy's on the issue of petitioner's consent to entry.  Petitioner merely speculates that he was prejudiced by counsel's failure to depose Nix.  Speculative and conclusory claims of prejudice are insufficient under *Strickland*.  *See Richter*, 562 U.S. at 112. This is especially true here, where counsel used Hallford's own

description of Hallford's entry into petitioner's home to argue that even under Hallford's version, there was no consent.  Deputy Hallford testified:

> A.  I know I knocked and he [petitioner] finally came to the door and opened it.  And then looked at me and said – I said, Hey, is that your van out there?  He went back and sat on the couch.  I says, You got any weapons around you?  Then that's when he reached and pulled that gun.
>
> Q. [Defense counsel]: Did you identify yourself?
>
> A.  I was in uniform, ma'am.
>
> Q.  Did he invite you into the house?
>
> A.  Yes.
>
> Q.  How did he invite you in?
>
> A.  Well, he said – well, when he went to the couch and sat down, at that point for my own safety I walked in there.  And I asked him, I said, Hey, do you have any guns?  He didn't' answer.  He just reached and pulled that gun out.  So if he said, come on in, I can't remember exactly if he said that or not.

(Ex. E, Hallford Depo. at 153-154; *see also* Ex. B, pp. 13-16 (defense counsel's argument on motion to dismiss)).

As to counsel's investigation of an "in-dash cam" recording, the record establishes that defense counsel asked Deputy Hallford during deposition whether the car he was driving at the time of the incident had an "in-dash cam", and Hallford responded it did not.  (Ex. E, Hallford Depo. at 138).  Defense counsel also asked

Deputy Munhullon during deposition whether the car he was driving at the time of the incident had an in-dash cam. Munhullon responded that it did, but he did not activate the camera because policy generally limited its use to traffic stops and citizen contacts, and Munhullon was merely responding as a backup to an investigation of a burglary suspect. (Ex. E, Munhullon Depo. at pp. 180-81). Petitioner has not shown deficient performance or prejudice arising from counsel's investigation of the existence of an in-dash cam recording.

Fairminded jurists can concur in the state court's determination that petitioner failed to establish deficient performance and prejudice under *Strickland*. Petitioner is not entitled to federal habeas relief.

C.     Resolution of Petitioner's Additional Contention Regarding Prejudicial Effect of Failing to Depose Nix

Respondent argues that petitioner's claim that counsel's failure to depose Nix precluded him from challenging the veracity of Hallford's testimony is "a new legal theory for relief, one not presented to the state postconviction court" and, therefore, unexhausted and procedurally defaulted. (Doc. 17, p. 11). The court need not resolve the exhaustion question, because even if construed as a "new legal theory for relief", this aspect of petitioner's claim fails on the merits. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding

the failure of the applicant to exhaust the remedies available in the courts of the State.").  As discussed above, petitioner's claim of prejudice is wholly speculative and conclusory.  Petitioner offers no facts to support his conclusion that there is a reasonable probability the result of his trial would have been different had counsel deposed Deputy Nix.  Petitioner is not entitled to federal habeas relief on Ground Four.

Ground Five     "Trial counsel was ineffective for failing to file a proper motion to dismiss the charges of Burglary, Grand Theft, and Criminal Mischief, after it was clear on the face of the record that the alleged victim committed perjury, and gave false statements to the investigating authorities, constituting a *Giglio* violation." (Doc. 1, p. 14).

Petitioner claims the victim, Timothy Gibson, gave false statements to Deputy Hallford when Hallford responded to Gibson's 911 call.  Specifically, petitioner alleges:

> Mr. Gibson stated that he had seen the Defendant coming out of his backyard.  (TT-85, Vol. I).  However, on cross-examination, Mr. Gibson testified that he never saw the Defendant coming through the gate of his privacy fence, or inside the fence, and that he never saw the Defendant on the front porch of his home.  (TT-99, Vol. I).

> The Defendant contends that these false statements were the basis for Deputy Hallford to arrest him on the charges of burglary, grand theft, and criminal mischief.  And trial counsel's error clearly constitutes ineffective assistance of counsel.  And if not for counsel's error, it is reasonable to believe that the outcome of this proceeding would have been different.

(Doc. 1, p. 14).  The parties agree that petitioner presented this claim to the state courts in his Rule 3.850 proceeding.  (Doc. 1, pp. 14-15; Doc. 17, p. 12).

A.    Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of counsel is the *Strickland* standard outlined above.

B.    Section 2254 Review of State Courts' Decision

The state circuit court's written order, which is the last reasoned decision rejecting petitioner's claim, denied relief as follows:

> Defendant claims that the victim initially testified he saw "the defendant coming out of his [the victim's] backyard;" but that subsequently the victim testified he "never saw the defendant coming through the gate of his privacy fence, or inside the fence and that he never saw the defendant on the front porch of his home."  Therefore, Defendant concludes, counsel should have argued a <u>Giglio</u> violation in a motion to dismiss, alleging that the victim "committed perjury."
>
> The victim's testimony on direct examination was that he first saw Defendant "walk up from the side of my house."  On cross-examination, the victim described more specifically how and where he caught the first glimpse of defendant, and acknowledged that he did not see Defendant pass through the "threshold portion" of the privacy fence around the backyard.
>
> This does not constitute perjury, a <u>Giglio</u> violation, or any other basis for an objection or motion.  Defense counsel attempted to impeach the victim's identification of Defendant at length; however, the fact remained that the victim observed Defendant in broad daylight, in the victim's driveway, loading items into Defendant's van.  The two men exchanged words and then Defendant drove away.  The victim further

testified that he entered his house to find it "ransacked" and burglarized. The evidence in this case was not weak or tenuous. Defendant is not entitled to relief on this claim.

(Ex. J, pp. 64-65) (footnotes omitted). The First DCA summarily affirmed. (Ex. M).

The "contrary to" prong of the AEDPA standard is not implicated, because the state court utilized the *Strickland* standard. Section 2254(d)(2) likewise provides no basis for relief, because petitioner has not shown that "no 'fairminded jurist' could agree" with the state court's factual determinations. *Holsey*, 694 F.3d at 1257; *Landers.*, 776 F.3d at 1294. The remaining question is whether petitioner has satisfied AEDPA's "unreasonable application" standard, 28 U.S.C. § 2254(d)(1), giving deference to the state court's fact findings. 28 U.S.C. § 2254(e).

The state court determined, reasonably, that counsel had no plausible basis to argue for dismissal of the charges based on perjury or a *Giglio* violation, because petitioner failed to demonstrate victim Gibson's testimony was false. Gibson testified at his deposition that when he first saw petitioner, petitioner "had just stepped out from the privacy fence by my house." (Ex. E, Gibson Depot at 205). Gibson explained that the privacy fence enclosed his backyard (*id*. at 205-206), and that "[t]he gate door was still open – or still swinging back when I caught him in my eyesight." (*Id*., p. 206). Gibson testified at trial that when he first saw petitioner,

petitioner was "walk[ing] up from the side gate of my house."  (Ex. B, p. 69). On

cross-examination, Gibson testified:

> Q [Defense counsel].  You stated that when you first saw the person that
> you believe to be my client, that he was coming out of the privacy fence
> area from the home; is that correct?
>
> A [Mr. Gibson].  Correct.
>
> Q.  Can you please tell me where you were located at the time when you
> allegedly saw my client exiting the gate?
>
> A.  When I actually heard the gate move I was on the passenger side of
> my truck and I had just shut the door to secure my daughter in and I
> heard the noise. . . .
>
> Q.  So according to your testimony, you heard the gate shut; is that
> correct?
>
> A.  I didn't' hear it shut.  I heard a movement in that direction.
>
> . . . .
>
> Q.  Isn't it true that if you were about to enter your truck that was parked
> parallel to your front door at 2200 Grundy Street, that you could not see
> in back of you to see who you've identified as my client coming through
> your privacy gate?
>
> A.  No, that's not correct.  I was on the driver's side – I mean, the
> passenger side of my truck at the time, and I shut the door to my
> daughter when I heard something.  My extended cab is about to this
> portion of where my body is, and I could see by moving my head this
> quickly, could see through the glass of the van and I could see the
> movement.  And then I had just finished shutting [the] door when I
> heard that, and so that's when I immediately started walking over.  And
> so you could still see the door movement as he had just come out

through the door.  And the door was actually shut, too, when I first arrived.

Q.  Did you actually see my client coming through the gate of your privacy fence?

A.  I never saw him walk through the threshold portion of it, no.

Q. Did you ever see my client inside the gate area of the backyard of your home?

A.  I can't see through the woods, so no.

Q.  Did you ever see my client on the front porch of your home?

A.  No.

(Ex. B, pp. 97-99).  The state courts reasonably concluded that Gibson's testimony

was not false or perjurious, and that counsel was not ineffective for failing to move

for dismissal on that basis.  *Freeman v. Attorney Gen., Fla*., 536 F.3d 1225, 1233

(11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim.

. . ."); *see also Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (concluding

that counsel was not ineffective for failing to raise issues clearly lacking in merit);

*Chandler v. Moore*, 240 F.3d 907 (11th Cir. 2001) (concluding that counsel was not

ineffective for failing to raise a non-meritorious objection); *Bolender v. Singletary*,

16 F.3d 1547, 1473 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise

nonmeritorious issues does not constitute ineffective assistance.").  Petitioner is not

entitled to federal habeas relief on Ground Five.

Ground Six          "Trial counsel was ineffective for failing to request a jury
                    instruction on the lesser included offense of trespass."  (Doc. 1,
                    p. 15).

Petitioner claims trial counsel was deficient for failing to request a jury

instruction on the permissive lesser-included offense of trespass "because there was

evidence adduced at trial establishing all of the elements of trespass."  (Doc. 1, p. 15).

Petitioner claims he was prejudiced because victim Gibson lied to Deputy Hallford

to get petitioner arrested for a crime he did not commit, and then admitted at trial that

he lied, thereby leaving no evidence to support petitioner's burglary conviction.

Petitioner continues that absent an instruction on trespass, the jury was precluded

from convicting him of misdemeanor trespassing.  (Doc. 1, p. 16).  The parties agree

that petitioner presented this claim to the state courts in his Rule 3.850 proceeding.

(Doc. 1, p. 16; Doc. 17, p. 13).

A.    Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance

of counsel is the *Strickland* standard outlined above.

B.      Section 2254 Review of State Courts' Decision

The state circuit court's written order, which is the last reasoned decision

rejecting petitioner's claim, denied relief as follows:

> The failure to request that a jury be instructed on a lesser-included
> offense is generally not a cognizable claim in a postconviction motion
> because it is overly speculative.

> But we have difficulty accepting the proposition that there
> is even a substantial possibility that a jury which has found
> every element of an offense proved beyond a reasonable
> doubt, would have, given the opportunity, ignored its own
> findings of fact and the trial court's instructions on the law
> and found a defendant guilty of only a lesser included
> offense.

Sanders v. State, 847 So. 2d 504, 506-07 (Fla. 1st DCA 2003).

> Although Defendant is correct that trespass is a lesser-included
> offense of burglary, the record reflects that the parties considered
> instructing the jury on trespass at the charge conference and determined
> that the instruction was not appropriate.  In other words, defense counsel
> considered requesting trespass as a lesser-included offense and made a
> decision not to do so.  See Strickland v. Washington, 466 U.S. 668, 104
> S. Ct. 2052, 2066 (1984) ("An attorney's performance must be
> reasonable under the prevailing professional norms, considering all of
> the circumstances, and viewed from the attorney's perspective at the
> time of trial.") See also Downs v. State, 453 So. 2d 1102, 1108 (Fla.
> 1984) ("There is a strong presumption of reasonableness that must be
> overcome, and strategic or tactical decisions by counsel made after a
> thorough investigation are 'virtually unchallengeable.'")

> After the jury found him guilty of burglary beyond a reasonable
> doubt, Defendant cannot now prove that they would have found him

guilty of the lesser-included offense of trespass it if had been offered as a choice.  Defendant is not entitled to relief on this claim.

(Ex. J, pp. 65-66) (footnote omitted).  The First DCA summarily affirmed.  (Ex. M).

Whether reviewed under AEDPA's deferential standard, or *de novo*, petitioner's claim fails because his assertion of prejudice is based on pure speculation.  *See Harris v. Crosby*, 151 F. App'x 736 (11th Cir. 2005).  Rejecting a similar claim, the court in *Harris* explained:

> Harris' assertions that he would have been convicted of the lesser included offense, as opposed to the greater offense, are pure speculation – speculation both that the state trial court would have decided to instruct the jury on the lesser included offense and that the jury, if instructed on the lesser included offense, would have convicted on it instead of the higher offense. That speculation is insufficient to undermine our confidence in the outcome of his trial.

*Id*. at *2.  The same is true here.  It is pure speculation to assert in this case – a case where the jury credited Mr. Gibson's testimony and found that the State proved beyond a reasonable doubt that petitioner burglarized Mr. Gibson's home – that there is a reasonable probability the jury would have ignored its own findings of fact and the trial court's instructions on the law, and found petitioner guilty of the lesser-included offense of trespassing.  Petitioner is not entitled to federal habeas relief on Ground Six.

<u>Ground Seven</u>      <u>"Trial counsel was ineffective for misadvising the Defendant on his right to testify."</u>  (Doc. 1, p. 17).

Petitioner alleges he repeatedly told counsel that the victim (Gibson) was not telling the truth and that he (petitioner) wanted to "tell his side of the story" by testifying at trial.  (Doc. 1, p. 17).  Petitioner describes his side of the story as:  "he was never on the inside of the victim's fence, or anywhere else on the victim's property, except being in the driveway."  (*Id*.).  Petitioner provides no other sworn or verified facts detailing his story.  *See supra* note 6.  Petitioner alleges that counsel dissuaded him from testifying by telling him that the State would tell the jury about his prior criminal record if he testified.  Petitioner asserts this was "misadvice":  "At the time of the trial, the Defendant did not know that the State was only allowed to ask two questions about his prior criminal record and as long as he answered the two questions truthfully, that would be the end of their inquiry."  Petitioner claims that but for counsel's "misadvice" he would have testified, and the outcome of his trial "could" have been different.  (*Id*.).  The parties agree that petitioner presented this claim to the state courts in his Rule 3.850 proceeding.  (Doc. 1, pp. 17-18; Doc. 17, p. 14).

A.    Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance

of counsel is the *Strickland* standard outlined above.

B.    Section 2254 Review of State Courts' Decision

The state circuit court's written order, which is the last reasoned decision

rejecting petitioner's claim, denied relief as follows:

> Defendant claims that he wanted to testify at trial, but that he did
> not testify because defense counsel told him if he testified "the state will
> tell the jury about his prior criminal history."
>
> First, the Court notes that a colloquy was performed to ensure that
> Defendant's decision not to testify was voluntary.  However, if the
> waiver was based on incorrect or unreasonable advice by counsel, it
> cannot refute a claim of ineffective assistance of counsel.   See
> Loudermilk v. state, 38 FLW D238 (Fla. 4th DCA January 30, 2013).

>> This court has held that pursuant to this evidentiary rule,
>> "the prosecutor is permitted to attack the [witness's]
>> credibility by asking whether the [witness] has ever been
>> convicted of a felony or a crime involving dishonesty or
>> false statement, and how many times."   The court
>> explained, "If the [witness] admits the number of prior
>> convictions, the prosecutor is not permitted to ask further
>> questions regarding prior convictions, nor question the
>> [witness] as to the nature of the crimes.  If, however, the
>> [witness] denies a conviction, the prosecutor can impeach
>> him by introducing a certified record of the conviction."

> Stallworth v. State, 53 So. 3d 1163, 1165-1166 (Fla. 1st DCA 2011)
> quoting Gavins v. State, 587 So. 2d 487, 489 (Fla. 1st DCA 1991); see
> also section 90.610(1), Florida Statutes.

Counsel's advice was not necessarily incorrect: it is true that if Defendant would have testified the jury would hear that he had prior felony convictions.[FN11]  Defendant also failed to demonstrate that any testimony he could have given would have changed the outcome of the proceedings.  See Harrington v. Richter, 131 S. Ct. 770, 792 (2011) ("The likelihood of a different result must be substantial, not just conceivable.") Defendant only states generally that he would have testified that he did not enter the victim's yard; however, he offers no other explanation that could have been provided in his trial testimony as to why he was in the victim's driveway carrying items in a laundry basket immediately after the house had been burglarized.  Therefore, Defendant was not prejudiced by any alleged misadvice that led him to waive his right to testify.  Defendant is not entitled to relief on this claim.

> [FN11]: The State asserted that Defendant had seven prior felony convictions at sentencing.  Id. at p. 203.

(Ex. J, pp. 66-67) (footnote 10 omitted).  The First DCA summarily affirmed.  (Ex. M).

The "contrary to" prong of the AEDPA standard is not implicated, because the state court utilized the *Strickland* standard.  Section 2254(d)(2) likewise provides no basis for relief, because petitioner has not shown that "no 'fairminded jurist' could agree" with the state court's factual determinations.  *Holsey*, 694 F.3d at 1257; *Landers.*, 776 F.3d at 1294.  The remaining question is whether petitioner has satisfied AEDPA's "unreasonable application" standard, 28 U.S.C. § 2254(d)(1), giving deference to the state court's fact findings.  28 U.S.C. § 2254(e).

The state court determined, reasonably, that petitioner failed to establish deficient performance under *Strickland*, because he did not demonstrate counsel's advice concerning disclosure of his prior felony convictions was an incorrect statement of Florida law.  This court defers to the state court's conclusion on the state-law issue.  The state court also determined, reasonably, that petitioner failed to establish a reasonable probability of a different verdict had he testified as he proposes.  Petitioner's admitted presence in the victim's driveway would have undermined the defense strategy of arguing reasonable doubt on the issue of identification.  Further, petitioner's lack of an explanation as to why he was in the victim's driveway carrying items in a laundry basket immediately after the house had been burglarized, combined with petitioner's admission to prior felony convictions (even without disclosure of the nature of those convictions), would have substantially lowered (if not destroyed) the defense's credibility with the jury  – a risk counsel avoided by challenging the State's identification evidence through vigorous cross examination.

Fairminded jurists can concur in the state court's determination that petitioner failed to establish deficient performance and prejudice under *Strickland*.  Petitioner is not entitled to federal habeas relief on Ground Seven.

<u>Ground Eight</u>        "<u>Trial counsel was ineffective for failing to impeach the State's</u>
<u>witness.</u>"  (Doc. 1, p. 18).

Petitioner claims trial counsel was ineffective for failing to use jail booking

records to impeach Deputy Hallford's testimony about the circumstances surrounding

his entry into petitioner's home.  Petitioner alleges he was lying on the couch asleep

in his boxer shorts when Hallford entered his home, and that he did not go to the door

and let him in.  (Doc. 1, p. 18).  Deputy Hallford testified petitioner was wearing

shorts and a T-shirt when he answered the door and was arrested.  (Doc. 17, Ex. B,

p. 134).  Petitioner alleges trial counsel told him she obtained a sworn statement from

a booking officer attesting that petitioner was brought to jail in his underwear, and

that the jail records would have impeached Hallford's testimony by showing

petitioner was wearing only boxer shorts when he was booked into the jail.  Petitioner

claims counsel's failure to use the jail records prejudiced him, because it "deprived

[him] of an opportunity tot challenge the veracity of the State witness."  (Doc. 1, p.

18).  The parties agree that petitioner presented this claim to the state courts in his

Rule 3.850 proceeding.  (Doc. 1, p. 19; Doc. 17, p. 17).

A.    Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance

of counsel is the *Strickland* standard outlined above.

B.      Section 2254 Review of State Courts' Decision

The state circuit court's written order, which is the last reasoned decision rejecting petitioner's claim, denied relief as follows:

> Defendant claims that counsel should have obtained records from the jail which would have shown that when Defendant was arrested, he was only wearing boxer shorts.  Defendant further claims that counsel should have impeached Deputy Hallford with the jail records when he testified that "I believe he opened the door and he had on like a t-shirt and shorts."  Defendant claims the facts that he was only wearing boxer shorts would have supported his story that he was asleep on the couch when the officers arrived.

> The record reflects that the officers arrived at Defendant's house several hours after the burglary.  Therefore, the fact that he was asleep on the couch does not prove that he did not commit the offenses at issue.  Moreover, the trial took place over a year after Defendant's arrest and it is understandable that Deputy Hallford might not have remembered this irrelevant detail correctly.  Because Defendant was not prejudiced, his claim fails.

(Ex. J, pp. 67-68) (footnotes omitted).  The First DCA summarily affirmed.  (Ex. M).

Fairminded jurists can concur with the state court's determination that the alleged deviation in the description of petitioner's clothing at the time he was booked into the jail was of little, if any, impeachment value – certainly not significant enough to raise a reasonable probability of a different result at trial.  The state court's rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application of the *Strickland* standard.  Nor was the decision based on

an unreasonable determination of the facts.  Petitioner is not entitled to federal habeas

relief on Ground Eight.

Ground Nine        "Trial counsel was ineffective for failing to file a motion to
                   suppress the gun as evidence based upon illegal search and
                   seizure."  (Doc. 1, p. 19).

        Petitioner's final claim is that trial counsel was ineffective for failing to file a

motion to suppress the gun evidence supporting the firearm possession charge (Count

2), on the grounds that the evidence was the product of an illegal entry and search of

his home.  As described in the background and procedural history above, the firearm

possession charge was severed from the remaining charges.  After the defense motion

to dismiss was denied and petitioner was convicted of the burglary, theft and criminal

mischief, petitioner pled guilty to the firearm possession charge.  Petitioner

acknowledges trial counsel's pre-trial motion to dismiss on Fourth Amendment

grounds, but appears to argue that after the trial and prior to his guilty plea, counsel

should have filed an additional motion to suppress the gun evidence on the grounds

that (1) victim Gibson's trial testimony showed that he (Gibson) provided false

statements to police to obtain petitioner's arrest and (2) Deputy Hallford's and

Deputy Munhullon's testimony showed that their search of petitioner's home and

seizure of the gun was illegal.  (Doc. 1, p. 20).  Petitioner asserts that "[h]ad trial

counsel done so, the gun would have been suppressed and the gun charge dismissed or nolle prosequi." (*Id*.).  Petitioner concludes:

> Trial counsel's error constitutes ineffective assistance of counsel, and if not for counsel's error, it is reasonable to believe that the outcome of the proceedings would have been different.  The Defendant was prejudiced by this error because it was the only evidence the State had to convict the Defendant of the charged offense.

(Doc. 1, p. 20).

Respondent argues that this claim was waived by petitioner's entry of his guilty plea, because petitioner does not assert he was mis-advised about the plea, and does not allege any facts going to the voluntariness of the plea.  (Doc. 17, p. 17).  Respondent argues that even if not waived, federal habeas review is barred by the *Stone v. Powell* doctrine, because the claim turns on the same issue (the legality of the search of petitioner's home) advanced for relief in Ground One and requires the court to re-determine the validity of the search in order to determine whether petitioner has shown prejudice (*i.e.*, that his Fourth Amendment claim has merit).  (Doc. 17, p. 18).  Respondent alternatively argues that the state courts at petitioner's trial and direct appeal properly concluded that the search of petitioner's home was legal, and the state postconviction courts' rejection of petitioner's ineffective assistance claim involves a reasonable application of *Strickland* and a reasonable determination of the facts.  (Doc. 17, p. 18).

The court assumes, without deciding, that petitioner's claim was not waived by his guilty plea. *See Arvelo v. Sec'y, Fla. Dep't of Corr.*, 788 F.3d 1345 (11th Cir. 2015) (holding that petitioner's claim that counsel was ineffective for failing to move to suppress his confession, combined with allegations that counsel failed to discuss any potential defenses with him, was not waived by petitioner's no contest plea); *but see Bullard v. Warden, Jenkins Corr. Ctr.*, 610 F. App'x 821, 824 (11th Cir. 2015) (holding that the waiver accompanying a guilty plea "includes any claim of ineffective assistance of counsel unless the deficient performance relates to the voluntariness of the plea itself." (*citing McMillin v. Beto*, 447 F.2d 453, 454 (5th Cir. 1971), *and Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983))).

The court also assumes, without deciding, that petitioner's claim is not barred by the *Stone v. Powell* doctrine. *See Kimmelman v. Morrison*, 477 U.S. 365, 374-382, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986) (holding that restrictions on federal habeas review of Fourth Amendment claims announced in *Stone v. Powell* do not extend to Sixth Amendment claims of ineffective assistance of counsel where the principal allegation and manifestation of inadequate representation is counsel's failure to file a timely motion to suppress evidence allegedly obtained in violation of the Fourth Amendment).

Even with the benefit of these assumptions, however, petitioner is not entitled to federal habeas relief because the state courts' rejection of his claim was not contrary to, or an unreasonable application of the *Strickland* standard.  In a plea situation, counsel must provide advice "within the range of competence demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 56-57, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985).  Under this standard, representation is ineffective only if counsel commits "serious derelictions" of her duty when advising the accused. *Stano v. Dugger*, 921 F.2d 1125, 1150–51 (11th Cir. 1991).  *Strickland*'s prejudice component, in the context of pleas, "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59.

When petitioner raised this claim in his state postconviction motion, the circuit court denied relief as follows:

> Defendant claims that counsel should have filed a motion to suppress the gun that was found at Defendant's residence due to an illegal search.  Defendant does not specifically allege how or why the search was illegal, however, he makes conclusory allegations throughout the motion asserting that the officer entered his home without consent. This issue was explored by counsel in a pre-trial motion to dismiss which was denied after the Court found that Defendant had consented to the officers entering his home.  As Defendant has not articulated any further basis for a meritorious motion to suppress, he cannot prove that counsel was deficient for failing to file such a motion.  Defendant is not entitled to relief.

(Ex. J, p. 68) (footnote omitted).  The First DCA summarily affirmed.  (Ex. M).

In light of the trial court's denial of counsel's first motion to dismiss premised on the same basis petitioner now proposes (the officers' alleged illegal entry and search of his home), a reasonable attorney could conclude that renewing the same motion – except re-labeling it a motion to suppress and including the additional, wholly ungrounded assertion that victim Gibson's trial testimony showed that his statements to Deputy Hallford were false – would not be successful.  The state courts reasonably concluded that petitioner failed to establish deficient performance under *Strickland*.

Petitioner also fails to establish prejudice, for two reasons.  First, petitioner's contention that counsel was ineffective for failing to file an additional motion to suppress/dismiss prior to trial on the severed firearm possession charge does not relate to counsel's advice regarding the plea, or otherwise materially implicate the knowing and voluntary nature of petitioner's guilty plea.

Petitioner was present during the trial.  Petitioner heard the proceedings (and ruling) on his motion to dismiss, as well as the witnesses' testimony, including that which now forms the basis of his proposed motion to suppress.  After the jury verdict was read finding petitioner guilty of burglary, grand theft and criminal mischief, the

court took a brief recess, followed by defense counsel's announcement that petitioner

elected to enter a plea to the firearm possession charge:

> THE COURT: All right.  There was a discussion as to whether
> he was going to take responsibility for the severed count.  And what
> count is it, 3?

> MR. GIRAUD [Prosecutor]: It's actually Count 2.

> MS. PATTI [Defense counsel]: Count 2.

> THE COURT: Is he or is he not?

> MS. PATTI: Yes, he is, Your Honor.

> THE COURT: All right.  Madam Clerk, I'm going to need the
> file back, then.  Does this scoresheet reflect all of the counts?

> MR. GIRAUD: It does, Your Honor.

> THE COURT: All right.  Ms. Patti, I have been handed a score
> sheet reflecting all of the counts in case number 08-CF-5944, reflecting
> 83.5 points.  Any objection to same?

> MS. PATTI: No, Your Honor.

> THE COURT: All right.  Mr. Kelley, I am going to have to go
> ahead and take a plea, though, as to the count that he severed, so would
> you please raise your right hand.

> GLENN DOUGLAS KELLEY

having been duly sworn to tell the truth, was examined and testified as
follows:

THE COURT: Madam Clerk, I don't have the speaker in front of him so Madam Court Reporter, if you can't hear him, let me know.

08-CF-5944, Counts 1, 3 and 4 have just come back in a guilty verdict for you, sir, but we have count 2.  Count 2 is possession of firearm, ammunition or electric weapon by a convicted felon.  Are you aware of that charge and – actually, it's 15 years state prison, $10,000 fine.

MR. GIRAUD: Three-year minimum mandatory.

THE COURT: Three-year minimum mandatory.

DEFENDANT: Yeah.

THE COURT: Are you aware of that charge as it has been brought against you, the maximum fines and sentence that it carries, and the minimum mandatory that it carries?

DEFENDANT: Yes.

THE COURT: You understand, sir, that by entering into this plea you give up your right to make the State prove their case against you beyond a reasonable doubt in a court of law?

DEFENDANT: Yes.

THE COURT: Since there isn't going to be a trial, you are giving up a number of rights.  You are giving up the right to have a trial.  In that trial, to be able to put on evidence, to cross examine that evidence. You are giving up your right to testify, to exercise your right to remain silent.  You are giving up your right to appeal your guilt or innocence. Do you understand this?

DEFENDANT: Yes.

THE COURT: And, or course, all of this would be with an attorney's help, if you could not afford one, to help you.  Do you understand that?

DEFENDANT: Yes.

THE COURT: Are you entering this plea freely and voluntarily?

DEFENDANT: Yes.

THE COURT: Have you had any sort of medicine, alcohol, or any other substances in the last 24 hours which would make it so that you do not understand what we're doing here?

DEFENDANT: No.

THE COURT: Are you satisfied with the services of your counsel?

DEFENDANT: Yes.

THE COURT: Do you understand if you are not a US citizen, any plea like this can be used against you [in] a deportation proceeding?

DEFENDANT: Yes.

THE COURT: According to your score sheet, the lowest permissible sentence I can give you is 41.6 months, and you face up to a maximum of – and is it 35 years?

MR. GIRAUD: Yes, Your Honor – no.  Actually I'll have to go back and say I think it's 40 because we amended the Information this morning.

THE COURT: That's correct.  You amended it to make it a felony as opposed to a misdemeanor.

MR. GIRAUD: Correct.  So the maximum would actually be 40.

THE COURT: So, of course, you've got the three-year minimum mandatory on Count 2.  It will be included in this score sheet, however, with the trial you just had.  So you are facing the three-year minimum mandatory, a minimum of 41.6 months state prison, up to a maximum of 40 years in state prison.  Do you understand that?

DEFENDANT: Yes.

THE COURT: Has anyone made you any promises as to what my sentence would be or any promises about anything whatsoever?

DEFENDANT: No.

THE COURT: With all this being said, sir, is it your intent today to enter a plea of guilty to count 2 because you are indeed guilty, or no contest because it would be within your best interest to do so?

DEFENDANT: Yes, guilty.

THE COURT: And normally we would have a factual basis which would be incorporated into a plea agreement.  Since there isn't a plea agreement, Ms. Patti, do you stipulate to the factual basis as outlined in the arrest report?

MS. PATTI: Yes, Your Honor.

THE COURT: And you understand, too, Mr. Kelley, I'm going to ask you the same question.  Because I have to have a factual basis to accept the plea that you want to enter into today, do you stipulate that the State had enough evidence, if they chose to, to pursue and to be successful in their case against you.

DEFENDANT: Obviously.

THE COURT: All right. then I find factual basis for the plea and I accept the plea.  And I will be more than happy to hear – and that is to Count 2.  And because there is a three-year minimum mandatory I am going to go ahead and adjudicate on all counts because it's going to have to be an adjudication.  So it's an adjudication on Counts 1, 2, 3 and 4. . . .

(Ex. C, pp. 197-202).

Petitioner's claim of ineffective assistance is not about his decision to plead guilty – he has not alleged or shown that counsel's failure to file a second motion to suppress materially implicates the validity of his plea.  To the contrary, the record establishes that petitioner knowingly and voluntarily entered his plea, aware that he was foregoing the opportunity to re-challenge the search and seizure, and satisfied with counsel's representation.

The second reason petitioner fails to meet *Strickland*'s prejudice prong is that his proposed motion to suppress stood no chance of success given the trial court's earlier determination that the search and seizure was legal and given the lack of support for petitioner's conclusory statement that Mr. Gibson gave false statements to police.

Fairminded jurists can concur in the state court's determination that petitioner failed to meet *Strickland*'s requirements.  Petitioner is not entitled to federal habeas relief on Ground Nine.

CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted). Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is ORDERED:

The clerk shall change the docket to reflect that Julie L. Jones has been substituted as respondent in this cause.

And it is respectfully RECOMMENDED:

1.   That the petition for writ of habeas corpus (doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Glenn Douglas Kelley*, Escambia County Circuit Court Case No. 08-CF-5944, be DENIED, and the clerk be directed to close the file.

2.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 26th day of January, 2016.

/s/ *Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th CIR. R. 3-1; 28 U.S.C. § 636.